UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

Johnny Cunegin #615281
_____
(Enter above the full name of the plaintiff(s), including prisoner number, in this action. If you cannot list all plaintiffs in the space provided, please write "see attached" and list all names on an additional page.)

v.

Sue Kowalski
Chris Loonsfoot
Alexander Hammons
Lance Ochampaugh
_____

FILED - GR
February 18, 2025 1:42 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: JW /2-18

2:25-cv-31
Phillip J. Green
U.S. Magistrate Judge

(Enter above the full name of the defendant(s) in this action. If you cannot list all defendants in the space provided, please write "see attached" and list all names on an additional page.)

**COMPLAINT**
*(Print Clearly)*

I. **Previous Lawsuits**
   **CAUTION**: The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in federal courts without prepayment of the civil action filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding *in forma pauperis* and require you to pay the entire $405.00 filing fee regardless of whether your complaint is dismissed.

   A. Have you ever filed a lawsuit while incarcerated or detained in any prison or jail facility?  Yes ☑  No ☐

   B. If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below. Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

   1. Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.
   U.S. District Court Western District of Michigan

   2. Is the action still pending?   Yes ☐   No ☑
       a. If your answer was no, state precisely how the action was resolved: Dismissed

   3. Did you appeal the decision?   Yes ☐   No ☑
   4. Is the appeal still pending?    Yes ☐   No ☑
       a. If not pending, what was the decision on appeal? _____

   5. Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit?  Yes ☐   No ☑
       a. If so, explain: _____

**Relief**

State briefly and precisely what you want the court to do for you.

_____
_____
_____
_____
_____
_____
_____

V. **Notice to Plaintiff Regarding Consent**

In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, you are hereby notified that the United States magistrate judges of this district court may, upon your consent, conduct any or all proceedings in this case, including a jury trial and entry of a final judgment. If you consent, any appeal from a judgment entered by a magistrate judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.

Magistrate judges have greater flexibility in their schedules than district judges, who have heavy criminal caseloads that take priority over civil trials. Accordingly, the magistrate judges are generally able to schedule prisoner civil rights cases for jury trial much sooner, and they are able to provide firm trial dates. Magistrate judges are experienced trial judges who handle a great number of prisoner civil rights cases.

Your decision to consent to the dispositive jurisdiction of a United States magistrate is entirely voluntary. If you do not consent to a magistrate judge, the case will be randomly assigned to a district judge. The magistrate judge already assigned to this case would continue to decide all pretrial matters and would handle all dispositive motions by report and recommendation.

Please check **ONE** box below to indicate whether you voluntarily consent to proceed with a United States magistrate judge or if you would instead prefer that the case be assigned to a district judge.

☒ I hereby voluntarily consent to the United States magistrate judge conducting all proceedings in this case, including entry of a final judgment and all post-judgment matters.

☐ I request that this case be assigned to a district judge.

2/7/25
**Date**

*Johnny Lumey*
**Signature of Plaintiff**

**NOTICE TO PLAINTIFF(S)**

The failure of a *pro se* litigant to keep the court apprised of an address change may be considered cause for dismissal.

# I.) Parties:

1.) Plaintiff: Johnny J. Cunegin #615281
Place of Present Confinement: Ionia Correctional Facility
Address: 1576 W. Bluewater Hwy., Ionia, MI 48846
Place of confinement during events described in complaint: Baraga Correctional Facility
13924 Wadaga Rd
Baraga, MI 49908

2.) Defendants:
Name of defendant #1: Sue Kowalski
Position or title: Prison Counselor
Place of employment: Baraga Correctional Facility
Address: 13924 Wadaga Rd., Baraga, MI 49908
Official and/or Personal Capacity: Personal/Individual

Name of defendant #2: Lance Ochampaugh
Position or title: Corrections Officer
Place of Employment: Baraga Correctional Facility
Address: 13924 Wadaga Rd., Baraga, MI 49908
Official and/or Personal Capacity: Personal/Individual

Name of defendant #3: Alexander Hammons
Position or title: Corrections Officer
Place of Employment: Baraga Correctional Facility
Address: 13924 Wadaga Rd., Baraga, MI 49908
Official and/or Personal Capacity: Personal/Individual

Name of defendant #4: Chris Loonsfoot
Position or title: Corrections Officer
Place of Employment: Baraga Correctional Facility
Address: 13924 Wadaga Rd., Baraga, MI 49908
Official and/or Personal Capacity: Personal/Individual

3.) At all times the named defendants were acting under the Color of State law.

# II.) Summary Statement:

Pg. 1)

1.) On March 21st, 2024 there was a fire in housing unit 3 that filled the unit up with toxic fumes and set off the smoke detector.

2.) C/o Hammons, along with several other c/o's came down onto the rock to locate where the fire had originated.

3.) Plaintiff informed officers that he could not breathe due to the smoke in the unit and that he had a medical detail which entailed that officers had to remove him from his cell away from the smoke.

4.) Officer Hammons stated to plaintiff "Fuck you and your detail" and continued on.

5.) Plaintiff begged and pleaded with officers to evacuate him from the unit as they had done with other inmates but they refused.

6.) Plaintiff feared for his life due to his health and was forced to put a wet towel over his face to prevent himself from continuously throwing up from the smoke.

7.) At no point was plaintiff evacuated in accordance with his medical detail or MDOC policy. Officer Hammons showed deliberate indifference to the clearly established medical need of the plaintiff.

8.) On March 23rd, 2024 there was a fire set in housing unit 3 on A-wing which is the same wing plaintiff was housed on at that time.

9.) The fire filled plaintiff's cell with toxic fumes that caused the smoke detector to be set off.

10.) Officer Alexander Hammons and officer Lance Ochampaugh made rounds on the wing attempting to locate the fire.

11.) In the midst of doing that, Plaintiff made both officers aware that he couldn't breathe and that he had a medical detail which stated he had to be pulled out.

12.) At no point did either officer attempt to follow policy and remove plaintiff from the imminent danger that posed an immediate threat to his health.

13.) Plaintiff suffered serious injuries due to the deliberate indifference of staff, which resulted in him passing out from smoke inhalation, falling and splitting his head open to the point where he woke up in a puddle of vomit and blood.

14.) Due to his severe injuries plaintiff sought medical attention but had to wait several days to be seen.

15.) As a result of his injuries Plaintiff has been placed on multiple different pain medications for neck and head injuries as well as headache medication for reoccurring migraines.

16.) On March 24th, 2024 in housing unit 3 C/o Fraki passed out breakfast trays on A-wing

17.) Upon reaching plaintiff's cell c/o Fraki recognized his name and stated "You decided to tell on my friends and write a grievance, snitches don't eat."

18.) Plaintiff responded that "he wasn't snitching and that his 1st amendment states that he has a right to protected conduct."

19.) C/o Fraki then stated "Since you keep talking monkeys don't do any hygiene" he then proceeded to cut Plaintiff's water off.

20.) C/o Fraki then stated that Plaintiff had to sign off his grievance or other c/o's would start to cut his water off also.

21.) Plaintiff wasn't on any form of water restriction nor was he misusing his water in any way which further proves this was simply done as retaliation.

22.) At no point of time did C/o Fraki cut plaintiff's water back on and he refused to feed plaintiff his breakfast tray.

23.) On April 2nd, 2024 in housing unit 3 on A-wing C/o Chris Loonsfoot passed out lunch trays

24.) Upon reaching plaintiff's door, C/o Loonsfoot grabbed a healthcare kite out of the door that was intended for the mental health professional.

25.) Plaintiff then stated to c/o Loonsfoot "You can't touch my healthcare kites, that's a HIPAA violation because there's confidential information on there and you're violating my 14th Amendment."

26.) C/o Loonsfoot responded to Plaintiff stating "You don't have any rights until you sign off the grievance on my co-workers." C/o Loonsfoot then opened up the kite and proceeded to read it aloud on the rock with the sole purpose of humiliating, intimidating, and harassing plaintiff.

27.) After leaving the rock and returning to pick up food trays c/o Loonsfoot had the same kite on the cart. He approached plaintiff's door and stated "I wasn't playing about not turning in your healthcare kite, watch this" he then proceeded to throw plaintiff's kite away.

28.) On April 4th, 2024 in housing unit 3 on A-wing C/o Justin Massie had another officer pull plaintiff out and take him to the phone room.

29.) Upon reaching the phone room Plaintiff had an uneasy feeling due to him knowing that he wasn't eligible to make a call and he didn't have a visit so there was no other reason for him to be pulled into there.

30.) C/o Massie came into the phone room and stated to plaintiff that he had two options, either forget about writing a grievance on c/o Loonsfoot for the incident on April 2nd, or go through with the grievance and they would kill Plaintiff's family. Plaintiff feared for his life as C/o Massie proceeded to tell him his family's names and his mother's address.

31.) On April 8th, 2024 in housing unit 3 on A-wing PC Sue Kowalski came through to do her legal rounds.

32.) PC Kowalski stopped at Plaintiff's cell and grabbed a very important grievance

33.) Plaintiff told her that the grievance was very important and he needed it turned in because that would be his only way of proving that his constitutional rights were violated.

34.) PC Kowalski stated that the "only right monkeys have is the right to shut up" and that I should follow that right and stop writing grievances because they're not going to turn them in and its only going to get worse for plaintiff.

35.) That same night Plaintiff wrote the grievance coordinator seeking a way to rectify the situation because the PC was planning on destroying his grievances but plaintiff didn't get a response.

36.) At no point of time did that grievance get processed which proves malicious intent and bad faith on behalf of the Prison Counselor

37.) On April 13th, 2024 in housing unit 3 on A-wing C/o Loonsfoot passed out breakfast trays.

38.) Upon reaching Plaintiff's cell C/o Loonsfoot stated "You tried to snitch on me thinking I wouldn't find out, now you're not eating"

Pg. 2)

39.) Plaintiff pleaded with C/o Loonsfoot begging for his breakfast tray stating that officer Massie had delivered the message and that he would forget about the grievance if he fed him and they left his family alone.

40.) C/o Loonsfoot refused to feed plaintiff his breakfast tray but falsified plaintiff's CAS-278 door card stating that plaintiff ate in an attempt to hide his actions

41.) At no point of time did plaintiff receive a breakfast tray on the day of April 13th, 2024.

42.) On May 9th, 2024 in housing unit 3 on A-wing Prison Counselor Sue Kowalski made her legal rounds.

43.) Upon reaching Plaintiff's door she stopped to retrieve the legal mail that was waiting for her.

44.) Plaintiff informed her that he had pertinent legal documents pertaining to his civil suit against her that he needed copied.

45.) She grabbed the legal documents out of Plaintiff's door, ripped them, placed them back into plaintiff's door and stated "Fuck you, you Faggot ass nigger."

46.) Plaintiff asked her why would she do that and she stated "because no one's going to believe you when its my word against yours"

47.) On May 10th, 2024 Plaintiff asked PC Kowalski when was he going to get his mattress back seeing as though his restriction had ended 5 days prior.

48.) PC Kowalski stated to plaintiff "I'm not giving you shit and neither is the other officers down here," and proceeded to keep going.

49.) On May 13th, 2024 in housing unit 3 on A-Wing C/o Loonsfoot passed out breakfast trays.

50.) Upon reaching Plaintiff's cell, C/o Loonsfoot stated to Plaintiff that he needed to stop writing grievances.

51.) Plaintiff responded stating that he will not stop because that's his Constitutional right. C/o Loonsfoot then proceeded up the rock refusing to feed plaintiff.

52.) At no point of time on the forementioned date did plaintiff receive a breakfast tray but C/o Loonsfoot falsified his CAS-278 stating that he did in an attempt to cover up his retaliation.

53.) On May 15th, 2024 in housing unit 3 on A-Wing PC Kowalski made her legal rounds.

54.) Upon reaching Plaintiff's door plaintiff stated that he'd now read policy and learned that this was clear for them subjecting Plaintiff to cruel and unusual punishment by keeping his mattress for almost 50 days as a means of retaliation and he would like his mattress back.

55.) PC Kowalski completely disregarded what Plaintiff stated and walked away from his door.

56.) Approximately 5-minutes later PC Kowalski returned to plaintiff's door with C/o Loonsfoot and stated unless plaintiff signed off his grievances on them he wasn't getting his mat.

57.) Plaintiff responded by stating that he wasn't going to do that and that he would eventually get a mat.

58.) C/o Loonsfoot then stated that he and PC Kowalski were hired into Corrections together so if she said I wasn't getting something then he would be sure it went like that.

59.) At no point of time on May 15th, 2024 did plaintiff receive his mattress and due to the extended period of time that plaintiff was forced to sleep on a concrete slab because of the retaliatory actions of the defendants, without proper bedding or a mattress, Plaintiff sustained severe back injuries.

60.) Due to the constant pain and suffering from the back injuries Plaintiff sought out medical attention which ultimately resulted in him being prescribed numerous pain meds and patches to help alleviate the pain from the back injuries as well as the nerve damage.

61.) On May 28th, 2024 in housing unit 3 on A-Wing C/o Loonsfoot passed out Lunch Trays

62.) Upon reaching Plaintiff's cell he asked plaintiff was he ready to sign off every grievance that he turned in on anyone that C/o Loonsfoot was cool with and when plaintiff stated no he proceeded on without feeding him.

63.) Plaintiff stated to C/o Loonsfoot that he was going to write another grievance on him for violating his Constitutional rights by not feeding him.

64.) C/o Loonsfoot responded that Plaintiff was wasting his time because the grievances would only be reviewed by staff whom he was cool with and they wouldn't ever go anywhere.

65.) Shortly after officer Loonsfoot falsified Plaintiff's CAS-278 door card by stating that Plaintiff ate when at no point of time did plaintiff receive a lunch tray.

66.) On June 12th, 2024 in housing unit 3 on C-wing PC Kowalski was making legal rounds as Plaintiff was being escorted outside.

67.) PC Kowalski stated that she had something for him and entered Plaintiff's cell

Pg. 3)

68.) After Plaintiff returned from yard he entered his room only to find books and hygiene items scattered across the floor alongside his toilet and pictures of loved ones and deceased relatives along with affidavits, some of his trial transcripts, grievances and other legal documents ripped up in the toilet.

69.) After further inquiry Plaintiff learned that no one else entered his cell outside of PC Kowalski; which means it was her.

70.) There was clear malicious intent on behalf of the PC, and dereliction of duties on behalf of those who failed to properly investigate.

III.) U.S. Constitutional Violation Claims:
  1.) Eighth Amendment
  2.) First Amendment

IV.) Elements to U.S. Constitutional Violation Claims:
  1.) Eighth Amendment Claim: Must establish two elements; "objective component" and "subjective component" meaning the seriousness of the challenged condition (objective); and the state of mind of the officials who are responsible for them (subjective).
  2.) First Amendment (Retaliation) Claim: Must show three elements; one, he engaged in Protected Conduct; two an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; Three, the adverse action was motivated, atleast in part by the Protected Conduct.

V.) Exactly how defendants Violated rights:
  1.) Actions using discriminatory language along with using "excessive force" violates the 8th amendment of the U.S. Constitution. The "Malicious and sadistic" use of force, even without significant injury, is an 8th Amendment violation, as is other treatment that unjustifiably inflicts pain or injury or is humiliating or unethical to human dignity.
  2.) Awareness of these unlawful and unconstitutional, conditions of confinement violates the 8th Amendment. The Court has held that unsafe conditions that pose an unreasonable risk of serious damage to (a prisoner) future health may violate the 8th Amendment even if damage has not yet occurred, and may not affect every prisoner exposed to the conditions.
  3.) Filing grievances is a "Protected Conduct" governed by the U.S. Constitution; Taking Plaintiff's personal property and legal documents and destroying them, taking Plaintiff's mattress for two months, calling Plaintiff racial slurs and threatening his family in an attempt to get him to sign off his grievances is an "adverse action" motivated by his Protected Conduct. The constitutional rights is intended to protect individuals from the abuse of power by government officials and from an abuse of power, lack of due care, such as from negligence and recklessness suggest no more than a failure to measure up to the conduct of a "reasonable person" retaliatory actions violates the 1st Amendment.

VI.) Actual Injury:
  1) Physical Injury   2.) Mental Injury

VII.) Summary of Actual Injury:
Due to defendants Loonsfoot, Kowalski, Ochampaugh, Hammons Recklessness, negligence, Malicious and sadistic actions, Plaintiff suffered a physical and mental injury; Plaintiff suffered pain and suffering, as well as multiple injuries from deliberate and cruel and unusual punishment along with mental anguish and mental deterioration from repeated unwanted conduct, lack of sleeping and eating and their Campaign of Harassment. Due to defendants unlawful and unconstitutional conduct Plaintiff suffered neck and back injuries, amongst others, and had to be placed on numerous pain meds along with breathing modifiers.

VIII.) Relief
The Plaintiff seeking Compensatory damages jointly and severally against defendants in the amount of $525,000 who have deprived plaintiff of his Constitutional rights for the physical and mental injuries in the result of their actions by defendants Loonsfoot, Ochampaugh, Kowalski, and Hammons.
Plaintiff seeking Punitive damages against defendants in the amount of $525,000
Plaintiff seeking Nominal damages against defendants in the amount of $525,000
Grant any other relief this Court feels proper, and Just in this Case.

I, Johnny Cunegin #615281 declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

1/22/25
Date

Pg. 4)

Signature: Johnny Cunegin #615281
Address: Ionia Corr. Facility
1576. W. Bluewater Hwy,
Ionia, MI 48846
Plaintiff in Pro Per

# I.) Parties:

1.) Plaintiff: Johnny J. Cunegin #615281

Place of Present Confinement: Ionia Correctional Facility
Address: 1576 W. Bluewater Hwy
Ionia, MI 48846

Place of Confinement during Events described in Complaint: Baraga Correctional Facility
13924 Wadaga Rd.
Baraga, MI 49908

2.) Defendants:

Name of defendant #1: Sue Kowalski
Position or title: Prison Counselor
Place of Employment: Baraga Correctional Facility
Address: 13924 Wadaga Rd. Baraga, MI 49908
Official and/or Personal Capacity: Personal/Individual

Name of defendant #2: Lance Ochampaugh
Position or title: Corrections Officer
Place of Employment: Baraga Correctional Facility
Address: 13924 Wadaga Rd. Baraga, MI 49908
Official and/or Personal Capacity: Personal/Individual

Name of defendant #3: Alexander Hammons
Position or title: Corrections Officer
Place of Employment: Baraga Correctional Facility
Address: 13924 Wadaga Rd. Baraga, MI 49908
Official and/or Personal Capacity: Personal/Individual

Name of defendant #4: Chris Loonsfoot
Position or title: Corrections Officer
Place of Employment: Baraga Correctional Facility
Address: 13924 Wadaga Rd. Baraga, MI 49908
Official and/or Personal Capacity: Personal/Individual

3.) At all times the named defendants were acting under the color of State law.

# II.) Summary Statement:

Pg.1)

1.) On March 21st, 2024 there was a **fire** in housing unit 3 that filled the unit up with toxic fumes and set off the smoke detector.

2.) C/o Hammons, along with several other c/o's came down onto the rock to locate where the fire had originated.

3.) Plaintiff informed officers that he could not breathe due to the smoke in the unit and that he has a medical detail which entailed that officers had to remove him from his cell away from the smoke.

4.) Officer Hammons stated to plaintiff "Fuck you and your detail" and continued on.

5.) Plaintiff begged and pleaded with officers to evacuate him from the unit as they had done with other inmates but they refused.

6.) Plaintiff feared for his life due to his health and was forced to put a wet towel over his face to prevent himself from continuously throwing up from the smoke.

7.) At no point was plaintiff **evacuated in accordance** with his **medical detail** or MDOC policy. Officer Hammons showed deliberate indifference to the clearly established **medical need of the plaintiff.**

8.) On March 23rd, 2024 there was a **fire set in housing** unit 3 on A-wing which is the same wing plaintiff was housed on at that time.

9.) The fire filled plaintiff's cell with toxic fumes that caused the smoke detector to be set off.

10.) Officer Alexander Hammons and officer Lance Cchampaugh made rounds on the wing attempting to locate the fire.

11.) In the midst of doing that, plaintiff made both officers aware that he couldn't breathe and that he had a **medical detail** which stated he had to be **pulled out.**

12.) At no point did either officer attempt to follow policy and remove plaintiff from the imminent danger that posed an immediate threat to his health.

13.) Plaintiff suffered serious injuries due to the **deliberate indifference** of staff, which resulted in him passing out from smoke inhalation, falling and splitting his head open to the point where he woke up in a puddle of vomit and blood.

14.) Due to his severe injuries plaintiff sought medical attention but had to wait several days to be seen.

15.) As a result of his injuries plaintiff has been placed on multiple different pain medications for neck and head injuries as well as inadequate medication for reoccurring migraines.

16.) On March 29th, 2024 in housing unit 3 C/o Fraki passed out breakfast trays on A-wing.

17.) Upon reaching plaintiff's cell C/o Fraki recognized his name and stated "You decided to tell on my friends and write a grievance, snitches don't eat."

18.) Plaintiff responded that "he wasn't snitching and that his 1st amendment states that he has a right to protected conduct."

19.) C/o Fraki then stated "Since you keep talking Monkeys don't do any hygiene" he then proceeded to cut plaintiff's water off.

20.) C/o Fraki then stated that plaintiff had to sign off his grievance or other C/o's would start to cut his water off also.

21.) Plaintiff wasn't on any form of water restriction nor was he misusing his water in any way which further proves this was simply done as retaliation.

22.) At no point of time did C/o Fraki cut plaintiff's water back on and he refused to feed plaintiff his breakfast tray.

23.) On April 2nd, 2024 in housing unit 3 on A-wing C/o Chris Loonsfoot passed out lunch trays.

24.) Upon reaching plaintiff's door, C/o Loonsfoot grabbed a healthcare kite out of the door that was intended for the mental health professional.

25.) Plaintiff then stated to C/o Loonsfoot "you can't touch my healthcare kites, that's a HIPAA violation because those confidential information on there and you're violating my 14th Amendment."

26.) C/o Loonsfoot responded to plaintiff stating "You don't have any rights until you sign off the grievance on my co-workers." C/o Loonsfoot then opened up the kite and proceeded to read it aloud on the rock with the sole purpose of humiliating, intimidating, and harassing plaintiff.

27.) After leaving the rock and returning to pick up food trays C/o Loonsfoot had the same kite on the cart. He approached plaintiff's door and stated "I wasn't playing about not turning in your healthcare kite, watch this," he then proceeded to throw plaintiffs kite away.

28.) On April 4th, 2024 in housing unit 3 on A-wing C/o Justin Massie had another officer pull plaintiff out and take him to the phone room.

29.) Upon reaching the phone room plaintiff had an uneasy feeling due to him knowing that he wasn't eligible to make a call and he didn't have a visit so there was no other reason for him to be pulled into there.

30.) C/o Massie came into the phone room and stated to plaintiff that he had two options, either forget about writing a grievance on C/o Loonsfoot for the incident on April 2nd, or go through with the grievance and they would kill plaintiff's family. Plaintiff feared for his life as C/o Massie proceeded to tell him his family's names and his mother's address.

31.) On April 3rd, 2024 in housing unit 3 on A-wing P.C. Sue Kowalski came through to do her legal rounds.

32.) P.C. Kowalski stopped plaintiff's cell and grabbed a very important grievance pertaining to a HIPAA violation by officer Loonsfoot.

33.) **Plaintiff** told her that the **grievance** was very important and he needed it turned in because that would be his only way of proving that his constitutional rights were violated.

34.) P.C. Kowalski stated that the "only right monkeys have is the right to shut up" and that I should follow that right and stop writing grievances because she is not going to turn them in and its only going to get worse for plaintiff.

35.) That same night plaintiff wrote the grievance coordinator seeking a way to rectify the situation because the PC was planning on destroying his grievances but plaintiff didn't get a response.

36.) At no point of time did that grievance get processed which **proves malicious intent and bad faith on behalf** of the Prison **Counselor.**

37.) On April 13th, 2024 in housing unit 3 on A-wing C/o Loonsfoot passed out breakfast trays.

38.) Upon reaching plaintiffs cell C/o Loonsfoot stated "You tried to snitch on me thinking I wouldn't **find out, now you're not eating"**

Pg. 2)

39.) Plaintiff pleaded with C/o Loonsfoot begging for his breakfast tray stating that officer Massie had delivered the message and that he would forget about the grievance if he fed him and they left his family alone.

40.) C/o Loonsfoot refused to feed plaintiff his breakfast tray but falsified plaintiff's CAS-278 door card stating that plaintiff ate in an attempt to hide his actions.

41.) At no point of time did plaintiff receive a breakfast tray on the day of April 13th, 2024.

42.) On May 9th, 2024 in housing unit 3 on A-wing Prison Counselor Sue Kowalski made her legal rounds.

43.) Upon reaching Plaintiff's door she stopped to retrieve the legal mail that was waiting for her.

44.) Plaintiff informed her that he had pertinent legal documents pertaining to his civil suit against her that he needed copied.

45.) She grabbed the legal documents out of Plaintiff's door, ripped them, placed them back into plaintiff's door and stated "Fuck you, you Faggot ass nigger."

46.) Plaintiff asked her why would she do that and she stated "because no one's going to believe you when it's my word against yours"

47.) On May 10th, 2024 Plaintiff asked PC Kowalski when was he going to get his mattress back seeing as though his restriction had ended 5 days prior.

48.) PC Kowalski stated to plaintiff "I'm not giving you shit and neither is the other officers down here," and proceeded to keep going.

49.) On May 13th, 2024 in housing unit 3 on A-wing C/o Loonsfoot passed out breakfast trays.

50.) Upon reaching Plaintiff's cell C/o Loonsfoot stated to Plaintiff that he needed to stop writing grievances.

51.) Plaintiff responded stating that he will not stop because that's his constitutional right. C/o Loonsfoot then proceeded up the rock refusing to feed plaintiff.

52.) At no point of time on the forementioned date did Plaintiff receive a breakfast tray but C/o Loonsfoot falsified his CAS-278 stating that he did in an attempt to cover up his retaliation.

53.) On May 15th, 2024 in housing unit 3 on A-wing PC Kowalski made her legal rounds.

54.) Upon reaching Plaintiff's door Plaintiff stated that he'd now read policy and learned that this was clear for them subjecting Plaintiff to cruel and unusual punishment by keeping his mattress for almost 50 days as a means of retaliation and he would like his mattress back.

55.) PC Kowalski completely disregarded what Plaintiff stated and walked away from his door.

56.) Approximately 5-minutes later PC Kowalski returned to Plaintiff's door with C/o Loonsfoot and stated unless plaintiff signed off his grievances on them he wasn't getting his mat.

57.) Plaintiff responded by stating that he wasn't going to do that and that he would eventually get a mat.

58.) C/o Loonsfoot then stated that he and PC Kowalski were hired into Corrections together so if she said I wasn't getting something then he would be sure it went like that.

59.) At no point of time on May 15th 2024 did Plaintiff receive his mattress and due to the extended period of time that plaintiff was forced to sleep on a concrete slab because of the retaliatory actions of the defendants, without proper bedding or a mattress, Plaintiff sustained severe back injuries.

60.) Due to the constant pain and suffering from the back injuries Plaintiff sought out medical attention which ultimately resulted in him being prescribed numerous pain meds and patches to help alleviate the pain from the back injuries as well as the nerve damage.

61.) On May 28th, 2024 in housing unit 3 on A-wing C/o Loonsfoot passed out Lunch Trays.

62.) Upon reaching Plaintiff's cell he asked plaintiff was he ready to sign off every grievance that he turned in on anyone that C/o Loonsfoot was cool with and when plaintiff stated no he proceeded on without feeding him.

63.) Plaintiff stated to C/o Loonsfoot that he was going to write another grievance on him for violating his constitutional rights by not feeding him.

64.) C/o Loonsfoot responded that Plaintiff was wasting his time because the grievances would only be reviewed by staff whom he was cool with and they wouldn't ever go anywhere.

65.) Shortly after officer Loonsfoot falsified Plaintiff's CAS-278 door card by stating that Plaintiff ate when at no point of time did plaintiff receive a lunch tray.

66.) On June 12th, 2024 in housing unit 3 on C-wing PC Kowalski was making legal rounds as Plaintiff was being escorted outside.

67.) PC Kowalski stated that she had something for him and entered Plaintiff's cell

Pg. 3)

68.) After [illegible] entered [illegible] cell and [illegible] alongside his toilet and pictures of loved ones and deceased relatives along with affidavits, some of his trial transcripts, grievances and other legal documents ripped up in the toilet.

69.) After further inquiry Plaintiff learned that no one else entered his cell outside of PC Kowalski, which means it was her.

70.) There was clear malicious intent on behalf of the PC, and dereliction of duties on behalf of those who failed to properly investigate.

III.) U.S. Constitutional Violation Claims:
1.) Eighth Amendment
2.) First Amendment

IV.) Elements to U.S. Constitutional Violation Claims:
1.) Eighth Amendment Claim: Must establish two elements; "objective component" and "subjective component" meaning the seriousness of the challenged condition (objective); and the state of mind of the officials who are responsible for them (subjective).
2.) First Amendment (Retaliation) Claim: Must show three elements; one, he engaged in Protected Conduct; two, an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; three, the adverse action was motivated, at least in part by the Protected Conduct.

V.) Exactly how defendants violated rights:
1.) Actions using discriminatory language along with using "Excessive force" violates the 8th amendment of the U.S. Constitution. The "Malicious and sadistic" use of force, even without significant injury, is an 8th Amendment violation, as is other treatment that unjustifiably inflicts pain or injury or is humiliating or unethical to human dignity.
2.) Awareness of these unlawful and unconstitutional conditions of confinement violates the 8th Amendment. The court has held that unsafe conditions that pose an unreasonable risk of serious damage to (a prisoner) future health may violate the 8th Amendment even if damage has not yet occurred, and may not affect every prisoner exposed to the conditions.
3.) Filing grievances is a "Protected Conduct" governed by the U.S. Constitution; Taking Plaintiff's personal property and legal documents and destroying them, taking Plaintiff's mattress for two months, calling Plaintiff racial slurs and threatening his family in an attempt to get him to sign off his grievance is an "adverse action" motivated by his Protected Conduct. The constitutional rights is intended to protect individuals from the abuse of power by government officials and from an abuse of power, lack of due care, such as from negligence and recklessness suggest no more than a failure to measure up to the conduct of a "reasonable person" retaliatory actions violates the 1st Amendment.

VI.) Actual Injury:
1) Physical Injury    2.) Mental Injury

VII.) Summary of Actual Injury:
Due to defendants Loonsfoot, Kowalski, Ochampaugh, Hammons Recklessness, negligence, Malicious and Sadistic actions, Plaintiff suffered a physical and mental injury; Plaintiff suffered Pain and suffering, as well as multiple injuries from deliberate and cruel and unusual punishment along with mental anguish and mental deterioration from repeated unwanted conduct, lack of sleeping and eating and their Campaign of Harassment. Due to defendants unlawful and unconstitutional conduct Plaintiff suffered neck and back injuries, amongst others, and had to be placed on numerous pain meds along with breathing modifiers.

VIII.) Relief
The Plaintiff seeking compensatory damages jointly and severally against defendants in the amount of $525,000 who have deprived Plaintiff of his Constitutional rights for the physical and mental injuries in the result of their actions by defendants Loonsfoot, Ochampaugh, Kowalski, and Hammons.
Plaintiff seeking Punitive damages against defendants in the amount of $525,000
Plaintiff seeking Nominal damages against defendants in the amount of $525,000
Grant any other relief this Court feels proper, and just in this case.

I, Johnny Cunegin #615281 declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

1/22/25
Date

Signature / Johnny Cunegin #615281
Address: Ionia Corr. Facility
1576 W. Bluewater Hwy.
Ionia, MI 48846

Plaintiff in Pro Per

(Pg. 4)

Johnny Cunegin #615281
Ionia Correctional Facility
1576 W. Bluewater Hwy.
Ionia, MI 48846

U.S. District Court
399 Federal Building
110 Michigan St. N.W.
Grand Rapids, MI 49503