UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JOHNNY J. CUNEGIN,

                Plaintiff,

v.

SUE KOWALSKI, et al.,

                Defendants.

_____/

Case No. 2:25-cv-31

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.2.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104–134, 110 Stat. 1321 (1996), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named Defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case[.]" 28

2

U.S.C. § 636(c).   Because the named Defendants have not yet been served, the undersigned concludes that Defendants are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way Defendants are not parties who will be served with or given notice of this opinion.  *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim on which relief may be granted for the reasons detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. (*See* Compl., ECF No. 1, at PageID.3.) Plaintiff sues the following ICF staff in their individual capacity: Prison Counselor Sue Kowalski, Corrections Officer (CO) Lance Ochampaugh, CO Alexander Hammons, and CO Chris Loonsfoot.[2]   (*See id.*)

---

[2] In the facts section of the complaint, Plaintiff also describes actions allegedly taken by corrections officers Unknown Fraki and Justin Massie. (*See id.* at PageID.4, ¶¶ 16–22, 28–30.) These individuals are not named as Defendants in the case caption of the complaint, and they are not named in Plaintiff's list of Defendants. (*See id.*, PageID.1, 3.) Additionally, Plaintiff does not seek any relief against Fraki or Massid. (*Id.*, PageID.6.) Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). And, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against the non-party individuals discussed in the complaint would be properly dismissed for failure to state a claim upon which relief may be granted.

Plaintiff alleges that in March 2024, he was twice exposed to toxic fumes while in his cell in Housing Unit 3 at AMF, and that Defendants Hammons and Ochampaugh were deliberately indifferent to Plaintiff's health during these times. (*Id.*, PageID.4, ¶¶ 1–15.)[3]

Specifically, on March 21, Defendant Hammons came to Unit 3 to locate the source of a fire. (*Id.* ¶ 2.) Plaintiff informed unidentified officers "that he could not breathe due to the smoke in the unit and that he had a medical detail which entailed that officers had to remove him from his cell away from the smoke." (*Id.* ¶ 3.) Defendant Hammons told Plaintiff "f[***] you and your detail." (*Id.* ¶ 4.) Plaintiff "begged and pleaded" with unidentified officers to evacuate him. (*Id.* ¶ 5.) The unidentified officers evacuated other inmates, but not Plaintiff. (*Id.*) Plaintiff "was forced to put a wet towel over his face to prevent himself from continuously throwing up from the smoke." (*Id.* ¶ 6.)

Then, on March 23, Defendants Hammons and Ochampaugh came to Unit 3 to locate the source of another fire. (*Id.* ¶ 10.) Plaintiff "made both officers aware that he couldn't breathe and that he had a medical detail which stated he had to be pulled out." (*Id.* ¶ 11.) Neither officer attempted to remove Plaintiff. (*Id.* ¶ 12.) Plaintiff passed out from smoke inhalation, "falling and splitting his head open to the point where he woke up in a puddle of vomit and blood." (*Id.* ¶ 13.) Plaintiff sought medical attention "but had to wait several days to be seen." (*Id.* ¶ 14.) As a result of the fall,

---

[3] Herein, the Court will cite to PageID.3–6 of the complaint only, as PageID.7–10 are simply copies of the previous four pages.

Plaintiff "has been placed on multiple different pain medications for neck and head injuries as well as headache medication for reoccurring migraines." (*Id.* ¶ 15.)

Additionally, Plaintiff alleges that after these fires, between late March and mid-June of 2024, Plaintiff was subjected to retaliatory conduct by Defendants Kowalksi and Loonsfoot and non-parties Fraki, and Massie.[4] (*See id.*, PageID.4–6, ¶¶ 16–70.)

Specifically, on March 29, Officer Fraki passed out breakfast trays and, upon reaching Plaintiff's cell, stated "you decided to tell on my friends and write a grievance; snitches don't eat." (*Id.*, PageID.4, ¶ 17.) Plaintiff responded that he was not snitching and that he had a right under the First Amendment to protected conduct. (*Id.* ¶ 18.) Officer Fraki stated "since you keep talking, monkeys don't do any hygiene" and cut Plaintiff's water off. (*Id.* ¶ 19.) Officer Fraki told Plaintiff that he "had to sign off his grievance or other COs would start to cut his water off also." (*Id.* ¶ 20.) Plaintiff asserts he was not under any water restriction, and states that at no point did Officer Fraki turn the water back on or give Plaintiff a breakfast tray. (*Id.* ¶¶ 21–22.)

On April 2, Defendant Loonsfoot passed out lunch trays and, upon reaching Plaintiff's cell, "grabbed a health care kite out of the door that was intended for the

---

[4] Plaintiff does not allege any connection between his Eighth Amendment claims against Defendants Hammons and Ochampaugh and his First Amendment claims against Defendants Kowalski and Loonsfoot. Plaintiff does not allege that he filed grievances against Defendants Hammons and Ochampaugh that might have served as the motivation for the retaliatory conduct of Defendants Kowalski and Loonsfoot. Nonetheless, the Court will address the claims in this one action.

mental health professional." (*Id.* ¶¶ 23, 24.)  Plaintiff told Defendant Loonsfoot that he could not touch his health care kite because there was confidential information in it.  Defendant Loonsfoot responded that Plaintiff did not "have any rights until [he] signed off the grievance on my co-workers." (*Id.* ¶ 26.)  Defendant Loonsfoot then opened the kite and read the contents aloud to other prisoners.  Later, when Loonsfoot returned to pick up the food trays, he said to Plaintiff "I wasn't playing about not turning in your health care kite," and threw the kite away.  (*Id.* ¶ 27.)

On April 4, non-party Officer Massie had an unnamed officer take Plaintiff to the phone room; Plaintiff knew he could not make phone calls and had no visitors scheduled.  Officer Massie entered the phone room and told Plaintiff he had "two options: either forget about writing a grievance on CO Loonsfoot for the April 2 incident[,] or go through with the grievance and they would kill Plaintiff's family." (*Id.* ¶ 30.)  Officer Massie then listed off the names of Plaintiff's family and his mother's address.

On April 8, Defendant Kowalski stopped at Plaintiff's cell while on her legal rounds and grabbed a grievance "pertaining to a HIPAA violation by [CO] Loonsfoot." (*Id.* ¶ 32.)  Plaintiff asserted he needed to turn in the grievance so he could assert his constitutional rights.  Kowalski responded that "the only right monkeys have is the right to shut up" and Plaintiff should "follow that right and stop writing grievances because they're not going to turn them in and it's only going to get worse for Plaintiff." (*Id.* ¶ 34.)  Plaintiff contacted the "grievance coordinator" to inform them of

Kowalski's actions but received no response.  Plaintiff asserts that at no point was this grievance processed.

On April 13, Defendant Loonsfoot passed out breakfast trays and, upon reaching Plaintiff's cell, stated "you tried to snitch on me thinking I wouldn't find out, [so] now you're not eating."  (*Id.* ¶ 38.)  Plaintiff pleaded with Defendant Loonsfoot for his breakfast tray.  He also stated that "Officer Massie had delivered the message, and that [Plaintiff] would forget about the grievance if he fed him and they left his family alone."  (*Id.*, PageID.5, ¶ 39.)  Defendant Loonsfoot did not give Plaintiff his breakfast tray and "falsified Plaintiff's CAJ-278 door card" to indicate that Plaintiff had eaten.  (*Id.* ¶ 40.)

On May 9, Defendant Kowalski stopped at Plaintiff's cell while on her legal rounds and retrieved the legal mail that was waiting for her.  Plaintiff stated he needed copies made of documents pertaining to his civil suit against Kowalski. Defendant Kowalski "grabbed the legal documents out of Plaintiff's door, ripped them, placed them back into Plaintiff's door, and stated "f[***] you, you f[*****] ass [racial slur]."  (*Id.* ¶ 45.)  Plaintiff asked Defendant Kowalski why she ripped up the documents, and Kowalski responded "because no one's going to believe you when it's my word against yours."  (*Id.* ¶ 46.)

On May 10, Plaintiff asked Defendant Kowalski to return his mattress because his mattress restriction had expired five days prior.  Defendant Kowalski said "I'm not giving you s[***] and neither [are] the other officers down here."  (*Id.* ¶ 48.)

On May 13, Defendant Loonsfoot passed out breakfast trays and, upon reaching Plaintiff's cell, told Plaintiff he "needed to stop writing grievances." (*Id.*, ¶ 50.) Plaintiff asserted his right to submit grievances. Defendant Loonsfoot did not give Plaintiff his breakfast tray and "falsified Plaintiff's CAJ-278 door card" to indicate that Plaintiff had eaten. (*Id.* ¶ 52.)

On May 15, Defendant Kowalski stopped at Plaintiff's cell while on her legal rounds. Plaintiff requested his mattress back, asserting the officers had kept it from him "for almost 50 days." (*Id.* ¶ 54.) Defendant Kowalski walked away, and returned five minutes later with Defendant Loonsfoot. Defendant Kowalski stated that "unless Plaintiff signed off his grievances on them, he wasn't getting his mat." (*Id.* ¶ 56.) Plaintiff refused, and Defendant Loonsfoot responded that he and Kowalski "were hired into corrections together so if she said I wasn't getting something then he would be sure it went like that." (*Id.* ¶ 58.) Plaintiff asserts that because he was forced to sleep on a concrete slab for an extended time, he suffered severe back injuries and nerve damage and was prescribed numerous pain meds and patches.

On May 28, Defendant Loonsfoot passed out lunch trays and, upon reaching Plaintiff's cell, asked Plaintiff if he was "ready to sign off every grievance that he turned in on anyone that CO Loonsfoot was cool with." (*Id.* ¶ 62.) Plaintiff refused, and Defendant Loonsfoot continued on without giving Plaintiff his lunch tray. Plaintiff stated he was going to write another grievance because of this. Defendant Loonsfoot responded that Plaintiff "was wasting his time because the grievances would only be reviewed by staff whom he was cool with and they wouldn't ever go

anywhere." (*Id.* ¶ 64.)  Defendant Loonsfoot did not give Plaintiff his lunch tray and falsified Plaintiff's door card to indicate that Plaintiff had eaten.

On June 12, Defendant Kowalski encountered Plaintiff as he was being escorted outside and stated she "had something for him" as she entered his cell.  (*Id.* ¶¶ 66, 67.)  After Plaintiff returned from the yard, he found "books and hygiene items scattered across the floor."  (*Id.*, PageID.6, ¶ 68.)  He also found his pictures, affidavits, trial transcripts, grievances, and other legal documents "ripped up in the toilet." (*Id.*)  Plaintiff states that "after further inquiry, [he] learned that no one else entered his cell" while he was in the yard.  (*Id.* ¶ 69.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First and Eighth Amendments to the U.S. Constitution.  (*See id.* at PageID.6.)  As relief, Plaintiff seeks monetary damages.  (*See id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

10

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.    Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).   Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Discussion

### A.    First Amendment Retaliation Claims—Defendants Kowalski and Loonsfoot

The Court construes Plaintiff's complaint to raise First Amendment retaliation claims against Defendants Kowalski and Loonsfoot.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996), "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all . . . ." *Id.* at 353 n.3.

12

Plaintiff references filing many grievances.  He describes the content of only one: a grievance Plaintiff filed against Defendant Loonsfoot that alleged a HIPAA violation.[5] Beyond that, Plaintiff fails to allege any facts to support an inference that his grievances were nonfrivolous.

Regardless, accepting, at this stage of the proceedings, that Plaintiff's grievances were not frivolous, the alleged adverse actions by Defendants Kowalski and Loonsfoot—i.e., denying food, hygiene opportunities, and a mattress—would undoubtedly deter a person of ordinary firmness from complaining by spoken or written word.  Thus, Plaintiff has adequately alleged "adverse action."

Finally, Plaintiff's chronological account of the grievances and the adverse actions that followed the grievances includes many instances where the adverse action was clearly motivated by Plaintiff's filing of grievances.  Thus, Plaintiff's First Amendment retaliation claim against Defendants Kowalski and Loonsfoot cannot be dismissed at this preliminary stage of the proceedings.

### B.    Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

---

[5] HIPAA, the Health Insurance Portability and Accountability Act, establishes national standards to prevent medical professionals from disclosing patient information to anyone other than the patient and the patient's designated representatives. *See* 45 C.F.R. § 164.502.

wanton infliction of pain[.]" *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is

14

incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

### 1. Claims Regarding Smoke Inhalation—Defendants Hammons and Ochampaugh

With respect to Plaintiff's claims regarding smoke inhalation, as to the objective prong of the relevant two-prong test, Plaintiff alleges that in late March of 2024, there were two fires in Housing Unit 3 at AMF that exposed Plaintiff to smoke while in his cell. On March 21, Plaintiff "was forced to put a wet towel over his face to prevent himself from continuously throwing up from the smoke." (Compl., ECF No. 1, PageID.4, ¶ 6.) Then, on March 23, Plaintiff passed out from smoke inhalation, "falling and splitting his head open to the point where he woke up in a puddle of vomit and blood." (*Id.* ¶ 13.) Even absent these allegations, there can be little doubt that the prospect of a fire in the housing unit left Plaintiff "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *see, e.g.*, *Burley v. Miller*, 241 F. Supp. 3d 828, 839 (E.D. Mich. 2017) (finding sufficient allegations of an Eighth Amendment violation where a prisoner was forced to remain in an environment that exacerbated his respiratory conditions); *Censke v. Ekdahl*, No. 2:08-cv-283, 2009 WL 1393320, at *8 (W.D. Mich. May 18, 2009) (finding, on initial review, that the complaint sufficiently stated a deliberate indifference claim where, among other things, the plaintiff was required to remain in an environment that had been sprayed with a chemical agent); *see also, e.g.*, *Reilly v. Grayson*, 310 F.3d 519, 521 (6th Cir. 2002) (finding deliberate indifference claim could proceed where, among

other things, the prisoner-plaintiff alleged a serious medical condition that was exacerbated by second-hand smoke).

Here, obviously, Defendants Hammons and Ochampaugh were aware of substantial risks of significant harm because they were plainly aware of the fire. However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 844) (internal quotation marks omitted). With regard to both of these Defendants and both fires, Plaintiff alleges that the Defendants ignored Plaintiff's requests for help as they continued to search for the origin of the fire. In *Payne v. Spiessl*, No. 2:24-cv-143, 2024 WL 4490501 (W.D. Mich. Oct. 15, 2024), the Court considered the same allegations raised by another AMF inmate against Defendants Hammons and Ochampaugh regarding the March 23, 2024, fire. In that case, the Court recognized that the actions of Hammons and Ochampaugh to locate the source of the fire, and thus the source of the smoke, was "a reasonable response to **all** of the prisoners' medical needs." *Id.* at *4. Where Plaintiff's "own allegations suffice to show that the defendants did not disregard the risks," dismissal on screening for failure to state a claim is appropriate. *Dykes-Bey v. Washington*, No. 21-1260, 2021 WL 7540173, at *3 (6th Cir. Oct. 14, 2021). Because Plaintiff's allegations suffice to show that Defendants Hammons and Ochampaugh did not disregard the risk, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against them. Plaintiff presents no other claims against

16

Defendants Hammons and Ochampaugh; therefore, these Defendants and all of Plaintiff's claims against them will be dismissed.

> ### 2.     Claims Regarding Conditions of Confinement— Defendants Kowalski and Loonsfoot

Plaintiff contends that the same conduct that constituted adverse actions for his First Amendment claims, considered together, constitute cruel and unusual conditions of confinement.  With regard to Defendant Kowalski and Loonsfoot, those actions include the following:

1. On April 2, 2024, Defendant Loonsfoot took and then threw away Plaintiff's healthcare kite.

2. On April 8, 2024, Defendant Kowalski refused to take and deliver Plaintiff's grievance against Defendant Loonsfoot regarding the healthcare kite.

3. On April 13, 2024, Defendant Loonsfoot denied Plaintiff his breakfast tray.

4. On May 9, 2024, Defendant Kowalski ripped and returned Plaintiff's legal documents.

5. On May 10, 2024, Defendant Kowalski indicated that she would not return Plaintiff's mattress even five days after his mattress restriction had expired.[6]

6. On May 13, 2024, Defendant Loonsfoot denied Plaintiff his breakfast tray.

7. On May 15, 2024, Defendant Kowalski disregarded Plaintiff's request for the return of his mattress.

8. On May 28, 2024, Defendant Loonsfoot denied Plaintiff his lunch tray.

---

6 Plaintiff does not attribute the loss of his mattress to any action by Defendants Kowalski or Loonsfoot. It appears the Defendants may have only been involved in delaying the return of the mattress which, according to Plaintiff, should have been returned on May 5

      9.  On June 12, 2024, Defendant Kowalski messed up Plaintiff's cell and
         ripped up legal documents.

(Compl., ECF No. 1, PageID.4–6.)

      With respect to missing meals, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation, and Plaintiff fails to allege any facts to suggest that he missed meals for more than a limited period of time.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (holding that the denial of seven meals over six days was not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (concluding that the denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not rise to Eighth Amendment violation, where the prisoner failed to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (holding that the denial of a few meals over several months did not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (finding that the deprivation of two meals was not sufficiently serious to form the basis of an Eighth Amendment claim).  Based on that authority, the meals Plaintiff missed would not constitute intolerable conditions.  Accordingly, Plaintiff's contention that Defendants violated the Eighth Amendment by depriving Plaintiff of a few meals fails to state a claim on which relief may be granted.

Similarly, "[t]he level of discomfort and injury one might expect a prisoner to suffer by virtue of sleeping without a mattress for a few days simply cannot support a claim that the prisoner has been denied 'the minimal civilized measure of life's necessities.'" *Lee v. Wagner*, No. 1:17-cv-474, 2017 WL 2608752, at *4 (W.D. Mich. June 16, 2017) (quoting *Rhodes*, 452 U.S. at 347).  Despite variations on: (1) the reason for the restriction; (2) the duration of the restriction; (3) the susceptibility of the prisoner to injury; and (4) the alleged injury, this Court and other courts in the Sixth Circuit have routinely rejected Eighth Amendment claims based on mattress restrictions for set periods of time.  *See Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750 (6th Cir. Feb. 15, 1996) (prisoner denied mattress for two weeks); *Cook v. Leitheim*, 1:22-cv-630, 2022 WL 3040342, at *6 (W.D. Mich. Aug. 2, 2022) (concluding that a 30-day mattress restriction did not rise to the level of an Eighth Amendment violation);cases *Sanders v. Smith*, No. 1:11-cv-892, 2011 WL 5921246, at *17 (W.D. Mich. Nov. 27, 2011) (concluding that a 38-day mattress restriction did not rise to the level of an Eighth Amendment violation); *Jones v. Carberry*, No. 2:08-cv-268, 2010 WL 1172562, at *3 (W.D. Mich. Mar. 24, 2010) (concluding that a 39-day mattress restriction did not rise to the level of an Eighth Amendment violation); *Brandon v. Bergh*, No. 2:09-cv-179, 2009 WL 4646954, at *3–4 (W.D. Mich. Dec. 8, 2009) (concluding that a 30-day mattress restriction did not rise to the level of an Eighth Amendment violation).

However, in this case the duration of Plaintiff's mattress restriction was longer than the duration of the restriction in any of the cases cited above.  Moreover, Plaintiff alleges that sleeping on a concrete slab without his mattress resulted in back injuries and nerve damage that required medical treatment.  Under *Richmond*, 450 F. App'x at 455, those circumstances might well move Plaintiff's deprivation from a temporary inconvenience to the denial of the minimal civilized measure of life's necessities.  Accordingly, the Court concludes that Plaintiff's Eighth Amendment claim against Defendants Kowalski and Loonsfoot cannot be dismissed at this stage of the proceedings.

Plaintiff does not attribute any negative consequence from Defendant Loonsfoot's interference with his health care request.  Plaintiff does not claim he was unable to obtain healthcare services because Loonsfoot threw away Plaintiff's healthcare kite.  Moreover, Defendant Kowalski's "messing up" of Plaintiff's cell does not constitute  "deprivation[] of essential food, medical care, or sanitation" or "other condition[] intolerable for prison confinement," *Rhodes*, 452 U.S. at 348.  Accordingly, Plaintiff has failed to state a claim on which relief may be granted as to those conditions of confinement as well.

In summary, Plaintiff's allegations that Defendants Kowalski and Loonsfoot violated Plaintiff's Eighth Amendment rights fail to state a claim except for Plaintiff's allegations regarding the deprivation of a mattress for an extended period of time resulting in injury.

**<u>Conclusion</u>**

The Court will grant Plaintiff leave to proceed *in forma pauperis*.  Having conducted the review required by the PLRA, the Court will dismiss, for failure to state a claim, Plaintiff's claims against Defendants Hammons and Ochampaugh under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, all of Plaintiff's Eighth Amendment claims against Defendants Kowalski and Loonsfoot except for Plaintiff's claim that Defendants Kowalski and Loonsfoot deprived Plaintiff of a mattress for an extended period of time.  Plaintiff's First Amendment retaliation and Eighth Amendment conditions of confinement claims against Defendants Kowalski and Loonsfoot regarding the mattress deprivation remain in the case.

An order consistent with this opinion will be entered.


Dated:   April 23, 2025               /s/ Phillip J. Green
                                      PHILLIP J. GREEN
                                      United States Magistrate Judge

21